UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ALAN MICHAEL TIMPER**
2315 Bible Road
Lima, Ohio 45801

Case No. **3:12-CV-1223**_____

Judge _____

    Plaintiff

Vs.

**HARVEST CREDIT MANAGEMENT VII, LLC**
C/O NATIONAL REGISTERED AGENTS, INC., S/A
145 Baker Street
Marion, Ohio 43302

**RECEIVABLES PERFORMANCE MANAGEMENT, LLC, d/b/a RPM**
C/O CT CORPORATION SYSTEM, S/A
1300 East Ninth Street Suite 2400
Cleveland, Ohio 44114

**NATIONWIDE DEBT MANAGEMENT SOLUTIONS, LLC**
C/O NATIONAL REGISTERED AGENTS, INC., S/A
145 Baker Street
Marion, Ohio 43304

    Defendants.

---

**COMPLAINT WITH JURY DEMAND ENDORSED HEREON**

---

Now comes Plaintiff, Alan Michael Timper, by and through counsel, and for his Complaint, states and avers as follows:

## PARTIES & FACTS

1. This is a claim for actual and statutory damages brought by Plaintiff, Alan Michael Timper, an individual consumer, against Defendants, Harvest Credit Management Services VII, LLC (hereinafter "Harvest"), Receivables Performance Management, LLC, d/b/a/ RPM (hereinafter "RPM"), and Nationwide Debt Management Solutions, LLC (hereinafter "Nationwide").

2. Each defendant is a foreign corporation engaged in the business of collecting debts in Ohio.

3. This case arises from for breach of settlement agreement by Harvest, a true and accurate copy of which is attached hereto as Exhibit 1 (hereinafter "Settlement Agreement").

4. As set forth, *infra*, Harvest warranted that it was the lawful owner of the account which is the subject of Settlement Agreement.

5. Harvest further warranted that it would cease all collection activities and refrain from selling or assigning the debt to another.

6. The breach of agreement by Harvest led to further violations by each defendant herein pursuant to the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA"), and violations under the Ohio Consumer Sales Practices Act, R.C. §§ 1345.02 and 1345.03, *et seq*. (hereinafter "CSPA"); each of which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

7. At all times relevant herein, Plaintiff, Alan Michael Timper is and has been an individual, and a resident of Allen County, Ohio.

8. At all times relevant herein, Plaintiff, Alan Michael Timper is and has been a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and R.C. § 1345.01(D).

9. Jurisdiction of this Court is conferred by 15 U.S.C. § 1692k(d). This Court also has supplemental jurisdiction over the state law claims as those arise from a common nucleus of operative facts.

10. Venue is proper in this District because the acts and transactions transpired here, Plaintiff resides here, and Defendants transact business here.

11. At all times relevant herein, each defendants is and has been a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

12. Upon information and belief, Harvest maintains its principal place of business at 10500 Irma Drive, Northglenn, Colorado 80233.

13. Upon information and belief, RPM maintains its principal place of business at 1930 220th Street S.E., Bothell, Washington 96021.

14. Upon information and belief, Nationwide maintains its principal place of business at 9343 Tech Center Drive, Sacramento, California 95826.

15. The principal purpose of each defendant's business is the collection of debts.

16. Each defendant regularly attempts to collect debts alleged to be due to another.

17. Upon information and belief, each defendant regularly purchases debt in default.

18. Each defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

19. Each defendant is engaged in the collection of debts from Ohio consumers using the mail, telephone, and/or Ohio state court system.

20. On or about December 11, 2007, Harvest filed a lawsuit against Plaintiff in Lima Municipal Court, Lima, Ohio, styled *Harvest Credit Management VII, LLC v. Alan Michael Timper,* case number 2007-CVF-04620 (hereinafter "2007 Lawsuit").

21. As part of the 2007 Lawsuit, Harvest alleged it was the assignee of an alleged account described therein as a Barclay's Bank/ Juniper account. In this lawsuit, Harvest further alleged that Plaintiff owed $3,970.60. (hereinafter "Juniper Account").

22. The Juniper Account described *supra* is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

23. On or about April 2008, Plaintiff and Harvest entered into the Settlement Agreement with respect to the Juniper Account. As part of the Settlement Agreement, (Exh. 1, ¶ 2) Harvest represented and agreed under penalty of perjury that, *inter alia*,:

   a. Harvest was the lawful assignee of the Juniper Account; and
   b. Harvest released Plaintiff from any claims or demands related to the Juniper Account; and
   c. Harvest would terminate any further collections related to the Juniper Account; and
   d. Harvest would not sell, assign, or transfer the debt to another entity for any purpose.

24. Upon information and belief, on or after May 2008, Harvest sold, assigned or transferred the Juniper Account to two or more debt collectors; namely, RPM and Nationwide.

25. On or about May 14, 2011, RPM sent its initial letter in an attempt to collect a debt; namely, the Juniper Account. RPM represented that Plaintiff owed $5,397.39. A true and accurate copy is attached hereto as Exhibit 2.

26. Upon information and belief, Harvest assigned, sold or transferred the Juniper account to RPM.

27. In its collection letter to Plaintiff, RPM lists "Creditor: HARVEST CREDIT MANAGEMENT."

28. Between February 2012 and April 2012, Plaintiff received numerous debt collection telephone calls from Nationwide.

29. In its telephone calls, Nationwide representatives left voice messages representing, *inter alia,* that:

   a. (Feb. 14, 2012) it was an "urgent" message, and imperative that Plaintiff contact Nationwide immediately to discuss the "situation at hand;" and

   b. (April 18, 2012) the case had been forwarded to this department for "final decision," and Plaintiff must respond no later than 8 p.m. EST that day; and

   c. (April 19, 2012) the case had been forwarded for "enforcement state of Ohio" and Plaintiff needed to respond the following day between noon and 3 p.m.; and

   d. (April 20, 2012) that this was a "final message, unfortunately." The case was forwarded to his department for enforcement, which was "going to happen first thing Monday morning".

   e. (April 27, 2012) that it was important that Plaintiff call Nationwide's office to "stop [its] process."

30. During this period of time that Nationwide made collection telephone calls to Plaintiff, Plaintiff did not receive any written communication from Nationwide, including federally mandated language to explain his validation rights.

31. Harvest's assignment, sale or transfer of the Juniper Account was contrary to its agreement with Plaintiff and in violation of Settlement Agreement, and in violation of the FDPCA.

32. RPM and Nationwide each failed to investigate the debt (i.e., Juniper Account) accurately prior to initiating collection efforts, and ignored its obligations under the FDCPA and CSPA, in violation of the same.

33. Plaintiff feels frustrated, deceived and harassed by each defendant. Plaintiff became extremely concerned and anxious over Defendants' collection activities.

### FIRST CAUSE OF ACTION: FAIR DEBT COLLECTION PRACTICES ACT

34. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

35. This claim is for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.,* ("FDCPA") by Harvest, RPM and Nationwide, jointly and severally.

36. Each defendant's violations include, but are not limited to, failure to comply with the FDCPA.

37. Each defendant's actions and inactions were unfair and unconscionable pursuant to the broad scope of FDCPA § 1692f, by, *inter alia,* endeavoring collection activity on the Juniper Account when said account was the subject of settlement and all claims thereunder had been released.

38. Each defendant also violated the FDCPA § e(2), by falsely representing the character, amount, or legal status of the Juniper Account.

39. Harvest actively concealed the subsequent sale back of the Juniper Account into the stream of collection commerce from Plaintiff.

40. As a result of Harvest's concealment, Plaintiff has suffered collection activity related to the Juniper account from multiple debt collectors over the course of the past year.

41. Harvest also violated FDCPA § c(b) by communicating with someone other than Plaintiff's counsel, or the court, absent permission of the court regarding the Juniper Account when Harvest sold, assigned or transferred the Juniper Account.

42. RPM and Nationwide each committed additional violations of the FDCPA, including but not limited to:

    a. § e(5), by threatening to take action that cannot legally be taken.

    b. § g, by failing to comply with the notice of validation rights.

    c. § f(1), by attempting to collect amounts not authorized by agreement or law.

43. Nationwide has committed further FDCPA violations, including but not limited to:

    a. § e(1), giving the false impression that Nationwide in its collection efforts was affiliated with the state of Ohio.

    b. § d(5), placing phone calls without disclosing the representative's identity.

    c. § b(2), by communicating with third-parties that Plaintiff owes a debt.

44. As a result of the foregoing violations of the FDCPA, and as set forth therein, Defendants are each liable to Plaintiff; accordingly, Plaintiff seeks judgment declaring that the defendants' conduct violated the FDCPA, entitling Plaintiff to actual damages, statutory damages, and his reasonable costs and attorney's fees.

**SECOND CAUSE OF ACTION: CONSUMER SALES PRACTICES ACT**

45. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

46. This claim is for unfair or deceptive acts or practices committed by each defendant in violation of the Consumer Sales Practices Act, R.C. § 1345.01 *et seq.* and/or R.C. § 1345.03 *et seq.* ("CSPA"), jointly and severally.

47. Each defendant, as set forth more fully *supra,* violated the FDCPA in one or more manners, and knew, or should have known that doing so would be unfair to Plaintiff, but did so anyway, and that was unfair to Plaintiff.[1]

48. Harvest actively concealed from Plaintiff the subsequent sale back of the Juniper Account into the stream of collection commerce, and knew, or should have known that doing so would be unfair to Plaintiff, but did so anyway, and that was unfair to Plaintiff.

49. As a result of Harvest's concealment, Plaintiff has suffered collection activity related to the Juniper account from multiple debt collectors over the course of the past year, and that was unfair to Plaintiff.

50. RPM and Nationwide purchased, or otherwise took assignment of the Juniper Account, and attempted to collect same, without sufficient basis, including, *inter alia,* with appropriate procedures to ensure the Juniper Account had an outstanding balance as sought by RPM and Nationwide.

51. As a direct and proximate result of the aforementioned violations by Defendants, Plaintiff suffered frustration, aggravation, anxiety, humiliation, embarrassment, stress and inconvenience.

52. Plaintiff suffered, and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the aforementioned violations by Defendants.

53. As a result of the foregoing violations of the CSPA, Defendants are each liable to Plaintiff for actual damages, including non-economic damages, statutory damages, and reasonable costs and attorney's fees.

---

[1] Contrary to *Liggens v. May Co.* (1977) 53 Ohio Misc. 21, 373 N.E.2d 404.

## THIRD CAUSE OF ACTION: BREACH OF CONTRACT

54. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

55. This claim is for breach of contract by Harvest.

56. As set forth *supra*, Harvest and Plaintiff entered into a Settlement Agreement.

57. Harvest had a contractual obligation to, *inter alia,* honor Harvest's obligations per the details in the Settlement Agreement set forth *supra,* and on Exh. 1.

58. As consideration for performance of its contractual obligations, Harvest would, and did, receive a release of liability from the counterclaims that Plaintiff advanced in the 2007 Lawsuit.

59. As set forth herein, Harvest breach the Settlement Agreement by failing to refrain from selling, assigning or transferring the Juniper Account.

60. At all times relevant, Plaintiff has complied with all terms under the Settlement Agreement and his obligations to Harvest.

61. As a result of this breach of contract as set forth above and herein, *inter alia*, Plaintiff was subjected to unfair and harassing debt collection phone calls and letters during the past year.

62. As a result of Harvest's breach of contract, Plaintiff incurred, and continues to incur, actual, incidental and consequential damages.

63. Plaintiffs seeks compensation for his damages, including his reasonable attorney fees and costs as expressly provided in the Settlement Agreement (Exh. 1, ¶ 6), which provides that the prevailing party to any enforcement action shall be entitled to reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, Alan Michael Timper, demands judgment against Defendants, jointly and severally, as applicable in accordance with the allegations set forth *supra*, as deemed just and lawful by the Court; plus, on each claim, litigation costs, interest, reasonable attorney fees, and any and all other legal and equitable relief this Honorable Court deems just and lawful and as set forth *infra*.

### PRAYER FOR RELIEF

1. On the first claim, against each defendant, jointly and severally, for violation of the Fair Debt Collection Practices Act, declaratory judgment that each defendant's conduct violated the FDCPA, actual damages, statutory damages pursuant to 15 U.S.C. § 1692k, and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial.

2. On the second claim, against each defendant, jointly and severally, for violation of the Consumer Sales Practices Act, $200.00 statutory damages, or three times Plaintiff's actual damages, whichever is greater, economic and non-economic damages, and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial.

3. On the third, against Harvest, for breach of contract, more than $30,000.00 for compensatory damages to compensate Plaintiff for his damages, plus prejudgment interest at the maximum rate permitted by law, and other remedies and relief as deemed just and lawful by this Court, for each violation that may be proved at the trial herein.

Plus, on each and every claim, expenses of suit and litigation, interest from the date the contract was consummated, reasonable attorney fees; plus all costs, and any and all other legal and equitable relief deemed necessary and just.

**<u>JURY DEMAND</u>**

Pursuant to the Federal Rules of Civil Procedure, a trial by jury composed of the maximum number of jurors permitted by law is hereby demanded by the Plaintiff.

Respectfully submitted,

/s/ Amy L. Wells
Amy L. Wells (0078247)
WELLS LAW OFFICE, INC.
7925 Paragon Rd., Suite 101
Dayton, Ohio 45459
Tel: (937) 435-4000
Fax: (937) 433-1510
AWells@OhioConsumerHelp.com
www.OhioConsumerHelp.com
Lead Trial Attorney for Plaintiff